IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10–cv–01118–REB–KMT

THERESA L. DOWLING,

    Plaintiff,

v.

STURGEON ELECTRIC (MYR GROUP),
WILLIAM LONG, and
WILLIAM FREDRICKS

    Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This matter is before the court on "Defendants' Motion for Summary Judgment." (Doc. No. 107, filed Aug. 1, 2011 [Mot.].) For the following reason, the court recommends that Defendant's Motion be granted.

## STATEMENT OF THE CASE

The following statement of undisputed facts is taken from Defendants' Motion and Plaintiff's Complaint. In this case, Plaintiff alleges she was sexually harassed by her coworkers, discriminated against because of her sex, and retaliated against for reporting that alleged conduct.

Plaintiff began working for Defendant Sturgeon Electric Company, Inc. (hereinafter "Sturgeon") through Mountain States Line Constructors (hereinafter "MSLC"), a training

program for union apprentices. (Mot. Ex. A, Affidavit of Michael Hixon [Hixon Aff.], ¶¶ 4–5.) On April 21, 2008, James Bushnell, Sturgeon's senior traffic signals project manager, requested a traffic signal apprentice from MSLC to work the final months of Sturgeon's Alameda/C-470 and Riverpoint projects. (Mot. Ex. B, Affidavit of James Bushnell [Bushnell Aff.], ¶ 8.) MLSC sent Plaintiff to Sturgeon to work as a level 1 traffic signal apprentice and she began work on April 29, 2008. *Id.* At the Alameda/C-470 project Plaintiff reported to foreman Jeff Applegate. (Mot. Ex. C, Affidavit of Jeffrey Applegate [Applegate Aff.], ¶ 5.) Mr. Applegate reported to general foreman Rick Aspden, who, in turn, reported to Mr. Bushnell. (*Id.* ¶ 3.) At the Alameda/C-470 project, Plaintiff worked with Defendant Fredricks, who was employed as an operator, and with Defendant Long, who was employed as a journeyman. (Mot Ex. D, Deposition Transcript of Theresa Dowling [Dowling Dep.], 82:22-25, 83:6-25, 84:1-2, 107:8-20; Mot. Ex. E, Affidavit of William Long [Long Aff.], ¶ 4.)

      Beginning on May 15, 2008, less than three weeks after Plaintiff started with Sturgeon, Mr. Bushnell began documenting problems with Plaintiff's performance. (Bushnell Aff. ¶ 14.) For example, on that day—May 15, 2008—Plaintiff poured gasoline into a diesel air compressor, which cost Sturgeon several hundred dollars. (*Id.* ¶ 15.; *see also* Mot. Ex. F at 1.) On May 19, Mr. Applegate met with Plaintiff regarding Plaintiff's performance issues and discussed the performance expectations for an apprentice, requested that Plaintiff ask questions about the tasks she did not understand, and addressed Plaintiff's tendency to sit down on the ground in work areas. (Applegate Aff. ¶ 8.) The next day, however, Mr. Applegate had to warn Plaintiff not to stand underneath a suspended load on three separate occasions. (*Id.* ¶ 9.) Then, on May 28,

2008, Mr. Bushnell observed Plaintiff sitting on the ground watching two other workers. Bushnell Aff. ¶ 19.)  When Mr. Bushnell questioned Plaintiff, Plaintiff replied that she was "making sure these guys are working." (*Id.*)  Later that same day, Mr. Applegate noted that Plaintiff was unable to complete a conduit installation as directed.  (Applegate Aff. ¶ 10.) On May 29, 2008, Mr. Bushnell documented his opinion that Plaintiff had shown "no noticeable improvement."  (Bushnell Aff. ¶ 21; Mot. Ex. F.)

In light of Plaintiff's performance issues, on June 6, 2008, Mr. Bushnell decided that Plaintiff likely would be discharged at the end of the Alameda/C-470 and Riverpoint projects, which were scheduled for completion in early-July 2008.  (Bushnell Aff. ¶ 22.)  Further, because Mr. Applegate complained again to Mr. Bushnell on June 9, 2008 about Plaintiff's performance and attitude, Mr. Bushnell felt compelled to contact Mike Hixon, the Business Representative for Plaintiff's union, regarding the continued employment of a problematic apprentice. (*Id.* ¶¶ 23-24; Hixon Aff. ¶ 6.)

Thereafter, on June 13, 2008, Plaintiff lodged a complaint with Doreen Shaw, Sturgeon's Vice President of Human Resources, alleging that two male workers, Defendants Fredricks and Long, sexually harassed her.  (Mot. Ex. H, Affidavit of Doreen Shaw [Shaw Aff.], ¶ 5.) Specifically, Plaintiff repoted to Ms. Shaw that she was sexually harassed three times by Defendant Fredricks, and two times by Defendant Long.  (*Id.* ¶ 6.)  As to the first incident involving Defendant Fredricks, Plaintiff alleged that when she was bent over, Defendant Fredricks came up to her, made contract with her hips and buttocks, and pushed her over into the dirt.  (*Id.* ¶ 7.)  In the second incident involving Defendant Fredricks, Plaintiff alleged that she

was unable to start a van. (*Id.*) After Plaintiff asked for help, Defendant Fredricks came over and reached his arm into the vehicle to start the car. (*Id.*) While turning the key, Plaintiff alleges that Defendant Fredricks rubbed her arm and crotch for 10-15 seconds. (*Id.*) Finally, in the third incident involving Defendant Fredricks, Plaintiff alleged that she was bent overworking on a pipe when Defendant Fredricks told Plaintiff to "move your butt." (*Id.*) However, before Plaintiff could move, Defendant Fredricks grabbed her buttocks and hips to physically move her. (*Id.*)

In the first incident involving Defendant Long, Plaintiff alleged that she was bent over, and Defendant Long came up and slapped her on the buttock several times. (*Id.* ¶ 8.) As for the second incident, Plaintiff alleged that Defendant Long again hit her on the buttocks, and held his hand there. (*Id.*) Plaintiff also alleged that Mr. Long "bumps into [her] all the time." (*Id.*)

After receiving Plaintiff's complaints, Ms. Shaw offered Plaintiff time off with pay while an investigation was conducted. (*Id.* ¶ 9.) Plaintiff declined this offer. (*Id.*) Instead, Plaintiff was moved from the Alameda/C-470 project to the Riverpoint project. (*Id.*) Ms. Shaw began an investigation of Plaintiff's allegations the next business day, June 16, 2008. (*Id.* ¶ 10.) That same day, Plaintiff was 35 minutes late to a safety meeting. (Bushnell Aff. ¶ 26.) She told Mr. Applegate that she mistakenly went to the Riverpoint job site (Applegate Aff. ¶ 12); however, she told Ms. Shaw that she was distraught over the alleged harassment (Shaw Aff. ¶ 11).

To investigate Plaintiff's claims, Ms. Shaw interviewed Mr. Bushnell, Mr. Applegate, Defendant Fredricks, and Defendant Long. (Shaw Aff. ¶ 10.) Ms. Shaw also interviewed three other witnesses that Plaintiff named: groundsmen Benny Valdez and Chris Tomsha, and

apprentice Adam Berger. (*Id.*) None of these individuals corroborated Plaintiff's allegations. (*Id.*; Mot. Ex. I, *id.* Ex. J, Affidavit of William Fredricks [Fredricks Aff.], ¶ 5; Long Aff. ¶ 5-6.) Ms. Shaw completed her investigation on June 17, 2008 by finding Plaintiff's allegations of sexual harassment were unsubstantiated. (Shaw Aff. ¶ 12.) Nevertheless, Ms. Shaw permanently moved Plaintiff to the Riverpoint project, thereby ensuring that Plaintiff would not have to continue working with Defendants Fredricks or Long. (*Id.*)

At the completion of the Riverpoint project on July 2, 2008, Plaintiff was laid off in a reduction-in-force, along with two other workers. (Mot. Ex. K.)

## PROCEDURAL HISTORY

Plaintiff initiated this suit by filing her original Complaint (Doc. No. 3) on May 14, 2010. On August 13, 2010, Plaintiff filed her Amended Title VII Complaint (Doc. No. 12, filed Aug. 13, 2010 [Am. Compl.]) in response to deficiencies identified by the court with respect to her original Complaint. In her Amended Complaint, Plaintiff asserts claims for gender discrimination, retaliation, and sexual harassment resulting in a hostile work environment—all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Am. Compl. at 2-6.)[1] Plaintiff also asserts a claim pursuant to the Colorado Anti-Discrimination Act, Colo. Rev. Stat. § 24-34-402, as well as state law claims for assault and battery. (*Id.* at 7-10.) Defendants' Motion for Summary Judgment was filed on August 1, 2011. (*See* Mot.) On August 23, 2011, the court granted Plaintiff a four-day extension to respond to Defendants'

---

[1] Because Plaintiff has only sporadically numbered the pages of her Amended Complaint, the court refers instead to the page numbers of the document scanned by the Clerk of Court.

Motion, which resulted in a deadline of August 29, 2011 for Plaintiff to file her response. (Doc. No. 114.) On August 29, 2011, Plaintiff filed a second motion seeking an additional extension of time to respond to Defendants' Motion. (Doc. No. 115.) The court granted that motion in part, and ordered Plaintiff to respond to Defendants' Motion no later than September 12, 2011. (Doc. No. 117, filed Aug. 30, 2011.) Finally, District Judge Blackburn granted Plaintiff an additional extension of time through October 5, 2011 to respond to Defendants' Motion (Doc. No. 124, filed Sept. 21, 2011.) Despite these numerous extensions of time to respond to Defendants' Motion, Plaintiff did not file a response on or before October 5, 2011 and, to date, no response has been filed.

## LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998)

(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. Moreover, because Plaintiff is proceeding *pro se*, the court, "review[s] [her] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## ANALYSIS

In their Motion, Defendants argue that they are entitled to summary judgment on Plaintiff's discrimination, retaliation, and hostile work environment claims arising under Title

VII, as well as Plaintiff's state law battery and assault claims. The court addresses Defendants arguments in turn below.

### A.   *Title VII Gender Discrimination Claim*

Defendants argue that Plaintiff cannot make out a *prima facie* Title VII claim for gender discrimination because Plaintiff has not demonstrated that she was satisfactorily performing her work, or that she was discharged despite the adequacy of her work. (Mot. at 8–9.) Defendants also argue that Plaintiff cannot demonstrate that their legitimate, nondiscriminatory reason for terminating Plaintiff—specifically, that Plaintiff was terminated as part of a reduction-in-force because the Alamda/C-470 and Riverpoint projects concluded—was pretextual. (*Id.* at 9-10.)

Title VII prohibits an employer from failing or refusing to hire any individual or otherwise discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment privileges of employment" on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). To be actionable under Title VII, an adverse employment action must affect a "significant change" in an employee's employment status, "such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032–33 (10th Cir. 2004).

A plaintiff alleging gender discrimination under Title VII may prove intentional discrimination by direct or indirect evidence. *Sanders v. Sw. Bell Tel., L.P.,* 544 F.3d 1101, 1105 (10th Cir. 2008). When a plaintiff relies on indirect, or circumstantial, evidence the court applies the three-step burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792, 802–804 (1973) to evaluate the merits of the Plaintiff's claims.

Under this framework**:**

> A plaintiff bears the initial burden of setting forth a prima facie case of discrimination. After the plaintiff makes a prima facie case, the burden shifts to the employer to give a legitimate, nondiscriminatory reason for its employment decision. If the employer comes forward with a nondiscriminatory reason for its actions, the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e. unworthy of belief.

*Sanders,* 544 F.3d at 1105 (quotations and citations omitted).

In a case involving a reduction-in-force such as this one, to establish a *prima facie* case of illegal gender discrimination Plaintiff must prove: (1) she was in a protected class; (2) she was performing her work satisfactorily; (3) despite her satisfactory work, she was discharged; and (4) there was some evidence that Sturgeon's reduction-in-force decision involved intentional discrimination against her. *Gilkey v. Siemens Energy & Automation,* 125 F. App'x 908, 910 (10th Cir. 2005); *Beaird v. Seagate Tech., Inc.,* 145 F.3d 1159, 1165-66 (10th Cir. 1998)**.**

As to the third element, Defendants have introduced admissible evidence suggesting that Plaintiff was not performing her work in a satisfactory manner. Between May 15 and May 29, 2008—a span of essentially two weeks—Mr. Bushnell and Mr. Applegate noted at least four separate and considerable performance and safety issues with Plaintiff: (1) pouring gasoline into a diesel air compressor on May 15, 2008 (Bushnell Aff. ¶ 15); (2) standing underneath a suspended load on May 20, 2008 (Applegate Aff. ¶ 9); (3) sitting on the ground watching two other workers on May 28, 2008 (Bushnell Aff. ¶ 19) and (4) Plaintiff's inability to install a conduit as directed on May 29, 2008 (Applegate Aff. ¶ 19). Plaintiff has not contested that these

events occurred.  Consequently, in light of these performance issues, Mr. Bushnell decided that Plaintiff would be discharged at completion of the Alameda/C-470 and Riverpoint projects in early-July 2008.  (Bushnell Aff. ¶ 22.)

Plaintiff has not responded to Defendants' Motion.  Consequently, Plaintiff has not presented any evidence creating a genuine issue of material fact as to whether her job performance was satisfactory at the time of her discharge.  Accordingly, the court finds that Plaintiff cannot make out a *prima facie* case of intentional gender discrimination.

Relatedly, even assuming that Plaintiff could set forth a *prima facie* case of gender discrimination, Defendants have set forth a legitimate, nondiscriminatory reason for terminating Plaintiff and Plaintiff has failed to show that the reason was pretextual.  Here, as discussed above, Defendants have set forth evidence that Plaintiff was terminated pursuant to the reduction-in-force because she was a poor performer.  *Bryant v. Farmers Ins.*, 432 F.3d 1114, 1125 (10th Cir. 2005) ("Poor performance is a quintessentially legitimate and nondiscriminatory reason for termination.")  Therefore, it is incumbent upon Plaintiff to demonstrate that reasons was pretextual.

Typically a plaintiff demonstrates that a defendant's proffered legitimate, nondiscriminatory reason is pretextual by showing that: (1) the defendant's stated reason for the termination was false; (2) the defendant acted contrary to a written company policy prescribing the action taken by the defendant under the circumstances; or (3) the plaintiff was treated differently from other similarly-situated employees who violated work rules of comparable seriousness.  *Kendrick v. Penske Transp. Servs.,* 220 F.3d 1220, 1230 (10th Cir. 2000) (internal

citations omitted).  However, Plaintiff is not required to show pretext in one of the above manners.  *Id.* (citation omitted).  Ultimately, and more generally, "[a] plaintiff may show pretext 'by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons.'"  *Crowe v. ADT Sec. Servs., Inc.,* 649 F.3d 1189, 1196 (10th Cir. 2011) (quoting *Swackhammer v. Sprint/United Mgmt. Co.,* 493 F.3d 1160, 1167 (10th Cir. 2007)).  Summary judgment is appropriate where "the plaintiff has 'failed to produce any evidence from which a reasonable inference could be drawn' that the defendant's profferred reasons were pretextual."  *Barlow v. C.R. England, Inc.,* --- F. Supp. 2d ----, 2011 WL 3924964, at *5 (quoting *Salguero v. City of Clovis,* 366 F.3d 1168, 1176 (10th Cir. 2004)).

Again, Plaintiff has not responded to Defendants' Motion.  Therefore, she has not set forth any evidence that would suggest that Defendants' proffered justification for terminating Plaintiff was pretextual.  Indeed, even in the portions of Plaintiff's deposition that Defendants have gratuitously offered, Plaintiff is only able to muster her personal belief that her performance was not the basis for her termination.  (Dowling Dep. 144:4-25, 145:1-16, 155:12-16, 158:2-159:12.)  Plaintiff's unsupported opinion is simply insufficient to give rise to a reasonable inference that Defendants' proffered and well-documented reason for Plaintiff's termination was a mere pretext for invidious discrimination.

Accordingly, the court finds that Plaintiff cannot satisfy her burden to show a *prima facie* case of gender discrimination.  Moreover, the court finds that, even assuming that Plaintiff's

could set forth a *prima facie* case, she has failed to demonstrate that Defendants' legitimate, nondiscriminatory reason of Plaintiffs' poor performance was pretextual.  Therefore, the court finds that summary judgment is properly granted as to Plaintiff's gender discrimination claim.

**B.**     ***Title VII Retaliation Claim***

As with Plaintiff's gender discrimination claim, Defendants argue that they are entitled to summary judgment on Plaintiff's claim for reliation under Title VII, 42 U.S.C. § 2000e-3(a), because Plaintiff's fails to state a *prima facie* case.  (Mot. at 10-12.)  Defendants also maintain that Plaintiff has not shown that Defendants' legitimate, non-retaliatory reason for the adverse employment action involving Plaintiff was pretextual.  (*Id.* at 12-13.)

As with Title VII discrimination claims, a plaintiff can establish a Title VII retaliation claim either by direct evidence showing that retaliatory animus played a motivative part in the employment decision at issue, or by indirect, or circumstantial evidence, using the *McDonnell Douglas* three-part framework. *Twigg v. Hawker Beechcraft Corp.,* --- F.3d ----, 2011 WL 4838937, at *8 (10th Cir. Oct. 13, 2011).  Under the *McDonell Douglas* approach, a plaintiff "must first make out a *prima facie* case of retaliation by showing '(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.'" *Id.* (quoting *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008)).

Defendants argue that Plaintiff cannot make out a *prima facie* case of retaliation under Title VII because she cannot show that Defendants' alleged retaliatory actions were adverse

employment actions. The court disagrees. Defendants focus almost entirely on Plaintiffs' deposition testimony where she claimed that Sturgeon retaliated against her by requiring her to fill out apprenticeship credit forms and failed to offer her overtime. (Mot. at 11 (citing Dowling Dep. 148:8-25; 153:9-18; 231:12-25).) However, in her Amended Complaint, Plaintiff clearly states that once "Plaintiff complained about the unlawful action[,] I was terminated. Such termination was done as a result of my complaints." (Am. Complaint at 5.) "Termination, by definition, is a materially adverse employment action." *Sundquist v. D.R. Horton, Inc.,* No. 10–cv–03006–REB–BNB, 2011 WL 3236110, at *5 (July 28, 2011). Moreover, as a factual matter, it is undisputed that Plaintiff was indeed terminated. Accordingly, Plaintiff has satisfied the second element of a *prima facie* retaliation case.

Nevertheless, the court agrees with Defendants' argument that Plaintiff has failed to satisfy the third element of a *prima facie* retaliation case—that there was a causal connection between Plaintiff's protected activity and the materially adverse action. Defendants have set forth evidence that the decision to discharge Plaintiff after the completion of the Alameda/C-470 and Riverpoint projects was made on June 6, 2008. (Bushnell Aff. ¶ 22.) Indeed, in further support of their position, Defendants have attached a June 6, 2008 entry from Mr. Aspden's daily calendar documenting a conversation with Mr. Applegate about terminating Plaintiff for "just not working out," but ultimately deciding to "keep her to get the job done." (Mot. Ex. G.) The requisite causal connection for a *prima facie* retaliation case does not exist where a plaintiff's job is in jeopardy before she engages in protected activity. *Pfahl v. Synthes (USA),* 13 F. App'x 832, 836 (10th Cir. 2001) (citing *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1324 (10th Cir. 1997)).

Therefore, Plaintiff has not satisfied the third element of a *prima facie* retaliation case as necessary to survive summary judgment.

Finally, even if Plaintiff could make out a *prima facie* retaliation case, the court again finds that Plaintiff has failed to raise a genuine issue of material fact as to whether Defendants' legitimate, non-retaliatory reason for terminating Plaintiff was pretextual. As with a gender discrimination claim, if the plaintiff establishes a *prima facie* case of retaliation, the defendant "must offer a legitimate, non-retaliatory reason for the employment action." *Metzler v. Fed. Home Loan Bank,* 464 F.3d 1164, 1170 (10th Cir. 2006). If the defendant satisfies that burden, the plaintiff "bears the ultimate burden of demonstrating that the defendants' proffered reason is pretextual." *Id.*

As already discussed, Defendants have set forth evidence that Plaintiff was terminated pursuant to a reduction-in-force for being a poor performer, which is a legitimate, non-retaliatory reason for that adverse employment action. *See Bryant*, 432 F.3d at 1125. Plaintiff has not responded to Defendants' Motion, nor is there any evidence in the record suggesting that reason was used as a pretext to retaliate against Plaintiff. Accordingly, because Plaintiff has failed not only to set forth a *prima facie* case of retaliation, but also to rebut Defendants' proffered reason for her termination as pretextual, the court finds that summary judgment is properly granted as to Plaintiff's Title VII retaliation claim.

### C.     *Title VII Hostile Work Environment Claim*

Defendants next argue that Plaintiff's Title VII hostile work environment claim should be dismissed. More specifically, Defendants argue that Plaintiff fails to allege harassment

sufficiently severe or pervasive to constitute a hostile work environment. (Mot. at 13-16.) Additionally, Defendants argue that Plaintiff has failed to allege any grounds whereby that the alleged acts of Defendants Long and Fredrick could be imputed to Sturgeon. (*Id.* at 16-17.) Because the court agrees with the latter argument, it does not address the former.

To establish a hostile work environment claim, "a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Davis v. U.S. Postal Serv.,* 142 F.3d 1334, 1341 (10th Cir. 1996) (internal citations and quotations omitted). However, in order to survive summary judgment with respect to a hostile work environment claim, "the record must support *both* an inference of a hostile work environment and a basis for employer liability."[2] *Faragalla v. Douglas Cnty Sch. Dist.,* 411 F. App'x 140, 154 (10th Cir. 2011) (citing *Ford v. West,* 222 F.3d 767, 775 (10th Cir. 2000)) (emphasis added).

Where the conduct giving rise to a hostile work environment claim is committed by a supervisor with immediate authority over the plaintiff, the employer may be subject to respondeat superior liability. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 807 (1998); *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 765 (1998)*; see also McInnis v. Fairfield Communities, Inc.,* 458 F.3d 1129, 1136 (10th Cir. 2006)*.* However, where the conduct is

---

[2] An individual, non-employer defendant cannot be liable under Title VII. *Smith v. Lomax,* 45 F.3d 402, 403 (11th Cir. 1995); *Miller v. Maxwell's Int'l, Inc.,* 991 F.2d 583, 587 (10th Cir. 1993).

instead committed by a co-employee with no supervisory authority over the plaintiff, an employer may only be liable for the harassment under a negligence theory by "failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir.1998).

Here, Defendants Long and Frederick were Plaintiff's co-workers; they did not have supervisory authority over Plaintiff. (Shaw Aff. ¶ 5.) Accordingly, Plaintiff must demonstrate that Sturgeon failed to remedy or prevent the hostile work environment allegedly created by Defendants Long and Frederick.

To determine whether an employer adequately responded to the alleged harassment, and therefore was not negligent, the court looks to "whether the remedial and preventative action was reasonably calculated to end the harassment." *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 667 (10th Cir. 1998); *Tademy v. Union Pac. Corp,* 614 F.3d 1132, 1149 (10th Cir. 2008). "A stoppage of harassment shows effectiveness, which in turn evidences such reasonable calculation." *Adler,* 144 F.3d at 667. "The most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified." *Swenson v. Potter*, 271 F.3d 1184, 1193 (9th Cir.2001).

The court finds that Defendants have set forth evidence that Sturgeon adequately responded to Plaintiff's complaints of harassment. First, after Plaintiff complained to Ms. Shaw on June 13, 2008, Plaintiff was offered paid leave while an investigation was conducted, which

16

she declined. (Shaw Aff. ¶ 9.) Instead, Plaintiff was transferred to the Riverpoint project, away from Defendants Long and Fredrick. (*Id.*) Then, Ms. Shaw began an investigation of Plaintiff's allegations on the next business day, June 16, 2008. (*Id.* ¶ 10.) Ms. Shaw interviewed Mr. Bushnell, Mr. Applegate, Mr. Valdez, Mr. Tomsha, and Defendants Long and Fredricks. (*Id.*) None of these witnesses corroborated Plaintiff's accusations. (*Id.*) Nevertheless, Plaintiff was transferred to the Riverpoint project permanently to avoid any further contact with Defendants Fredricks and Long. (*Id.* ¶ 12.)

The court finds that these measures taken by Defendants sufficiently responded to Plaintiff's allegations of sexual harassment. Indeed, importantly, Plaintiff does not allege that any further harassment occurred after her transfer to the Riverpoint project. As a consequence, the court finds that Plaintiff has failed to set forth a basis for assigning liability onto Sturgeon for the alleged acts of Defendants Long and Fredricks as required to establish a hostile work environment claim. Accordingly, the court finds that summary judgment is properly granted as to Plaintiff's hostile work environment claim.

### D.     *State Law Claims*

Only Plaintiff's state law claims remain. While Defendants do argue that they are entitled to summary judgment on Plaintiff's assault and battery claims, they have failed to address Plaintiff's claim under the Colorado Anti-Discrimination Act, Colo. Rev. Stat. § 24-34-402. However, instead of addressing Plaintiff's state law claims on the merits, because Plaintiff's federal law claims all fail, the court finds it is appropriate to decline to exercise supplemental jurisdiction over her state law claims. *See Smith v. City of Enid ex rel. Enid City*

*Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.")  Accordingly, the court finds that Plaintiff's state law claims are properly dismissed without prejudice.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that "Defendants' Motion for Summary Judgment" (Doc. No. 107) be GRANTED.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 25th day of October, 2011.

BY THE COURT:

_____
Kathleen M Tafoya
United States Magistrate Judge